## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CATHERINE SPOON, on behalf of herself and all others similarly situated,<br><br>                       Plaintiff,<br><br>v.<br><br>CORE ORTHO INNOVATIONS INC<br><br>                       Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## CLASS ACTION COMPLAINT

1. Catherine Spoon ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Core Ortho Innovations Inc ("Core Ortho Innovations" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. This case is also brought pursuant to the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act").

4. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

5. Now, Plaintiff brings this class action on behalf of herself, and all others harassed by Defendant and its unlawful telemarketing tactics.

1

## PARTIES

6. Plaintiff, Catherine Spoon, is a natural person and a citizen of Texas in this District.

7. Defendant, Core Ortho Innovations Inc is a corporation that made calls into Texas.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

9. This Court has personal jurisdiction over Defendant because it directed telemarketing calls to Texas which establishes sufficient minimum contacts for claims arising from those telemarketing calls.

10. Thus, Defendant knew, or should have known, that it was directing telephone solicitations into Texas. Furthermore, the Defendant is a resident of this District.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12. This Court has supplemental jurisdiction over Plaintiff's Texas law claim pursuant to 28 U.S.C. § 1367 because the claim forms part of the same case or controversy as Plaintiff's federal TCPA claims.

## BACKGROUND

*The Telephone Consumer Protection Act*

13. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

14. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable

acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

15. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

16. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

17. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

18. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

19. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

20. The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

21. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

22. The TCPA prohibits the use of artificial or prerecorded voices when calling residential telephone numbers. 47 U.S.C. § 227(b)(1)(B).

23. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

24. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***The Texas Telephone Solicitation Act***

23. The Texas Legislature enacted the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act"), to protect Texas residents from intrusive and unwanted telemarketing communications.

24. Like its federal counterpart, the Texas Act was enacted to safeguard the privacy rights of individuals and to prevent the nuisance, invasion of privacy, and disruption caused by unsolicited telemarketing communications.

25. The Texas Act regulates "telephone solicitations," which are defined as telephone calls or messages initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

26. The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has made a prior express request to receive the communication or has otherwise provided prior express consent. Tex. Bus. & Com. Code § 305.053.

27. An "automatic dialing announcing device" includes equipment that stores or produces telephone numbers to be called and automatically dials those numbers and plays a recorded or automated message.

28. Telemarketing text messages sent using automated systems constitute "telephone solicitations" under the Texas Act when they are sent for the purpose of encouraging the purchase of goods or services.

29. The Texas Act provides a private right of action to any person who receives a telephone solicitation in violation of the statute. Tex. Bus. & Com. Code § 305.053.

30. A prevailing plaintiff may recover statutory damages of $500 for each violation.

31. If the trier of fact finds that the defendant knowingly or intentionally violated the Texas Act, the court may award additional damages as authorized by statute.

32. The Texas Act also authorizes injunctive relief to prevent further unlawful telephone solicitations.

*Plaintiff Catherine Spoon and Defendant's Text Message Contact*

33. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

34. Plaintiff's cellular telephone number is 214-384-XXXX (the "telephone number").

35. To avoid unsolicited telemarketing calls, the number has been on the National Do-Not-Call Registry since 2004.

36. Plaintiff uses her telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

37. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

38. Plaintiff has never received a reimbursement from any business for her telephone number.

39. Plaintiff has never taken a business-related tax-deduction for her telephone number.

40. The Plaintiff does not have a landline telephone.

41. As explained below, Defendant violated the TCPA numerous times.

42. Plaintiff received texts from Defendant starting in December of 2025.

43. On December 10, 2025, Plaintiff received the following unsolicited text message from Defendant:

"Confirm your no-cost Dental Implants Options. Limited availability! Offer ends today: https://corth.com/fnD/tBdXQB End to Stop"

44. Later that day, Plaintiff received another text message stating:

"Confirm your no-cost Dental Implants Options. Limited availability! Offer ends today: https://corth.com/hwJ/tBdXQB End to Stop"

45. Again, later that day, Plaintiff received an additional text message stating:

"Confirm your no-cost Dental Implants Options. Limited availability! Offer ends Tonight: https://corth.com/jtt/tBdXQB End to Stop"

46. On December 18, 2025, Plaintiff received the following text message:

"Confirm your no-cost Dental Implants! Limited spots! Offer ends tonight: https://c-orth.com/pNh/tBdXQB reply stop to end"

47. Later that day, Plaintiff received another text message stating:

"Confirm your no-cost Dental Implants! Limited spots! Offer ends soon: https://c-orth.com/jqx/tBdXQB reply stop to end"

48. The following day, Plaintiff received the following text:

"Confirm your no-cost Dental Implants! (2) spots left! Offer ends tonight: https://c-orth.com/QTN/tBdXQB reply stop to end"

49. On December 23, 2025, Plaintiff received:

"Accept your zero-cost Dental Implants or veneers today! (3) spots left! Offer ends today: https://corth.com/hcG/tBdXQB reply stop to end"

50. On December 26, 2025, Plaintiff received the following:

"You're approved for free Dental Implants! (3) spots left! Offer ends 12/27: https://c-orth.com/lMD/tBdXQB reply stop to end"

51. Later that day, Plaintiff received another text:

"You're approved for free Dental Implants! (2) spots left! Offer ends 12/27 https://c-orth.com/V-L/tBdXQB reply stop to end"

52. On January 2, 2026. Plaintiff received another text that said:

"You're approved for free Dental Implants or veneers! (2) spots left! Offer ends 12/31 https://c-orth.com/flQ/tBdXQB reply stop to end"

53. These text messages were solicitations and offered the Defendant's goods and services.

54. The text messages sent to Plaintiff contained hyperlinks hosted at domains including, but not limited to, "c-orth.com" and "corth.com."

55. Those hyperlinks redirected recipients to the website located at https://www.c-ortho.com/.

56. That is the Defendant's website.

57. The website promotes dental implant and veneer services and functions as a commercial marketing platform for orthodontic and dental treatment.

58. The text messages used promotional language including, inter alia, "Confirm your no-cost Dental Implants," "You're approved for free Dental Implants," "Accept your zero-cost Dental Implants," "Limited spots," "(2) spots left," and "Offer ends today."

59. The purpose of directing recipients to https://www.c-ortho.com/ was to generate prospective patients and sales leads for dental implant and veneer services, thereby increasing revenue for Defendant and its marketing partners.

60. Dental implants and veneers are high-cost medical procedures that are ordinarily provided in exchange for substantial payment, insurance reimbursement, or financed treatment plans.

61. Although the messages used phrases such as "no-cost," "zero-cost," and "free," those representations do not remove the messages from the definition of "advertisement" under the TCPA.

62. Upon information and belief, any "free" or "no-cost" representation was conditioned upon eligibility requirements, insurance participation, financing approval, bundled services, limited promotional terms, or subsequent paid procedures.

63. Even if an initial consultation or limited portion of treatment were offered without charge, the overall purpose of the campaign was to induce recipients to enter into commercial transactions for paid dental services.

64. The "free" representation functioned as a marketing hook designed to draw consumers into a sales pipeline for dental treatment.

65. The economic objective of the campaign was to obtain paying patients, secure insurance reimbursements, arrange financing agreements, and generate revenue from dental implant and veneer services.

66. Accordingly, the text messages sent to Plaintiff were sent for the purpose of encouraging the purchase of goods or services and constitute telemarketing within the meaning of the TCPA.

67. Defendant sent the above-described text messages using equipment that had the capacity to store or produce telephone numbers to be called and to automatically send text messages to those numbers without human intervention.

68. The text messages received by Plaintiff were uniform in format and content and were part of mass promotional campaigns offering discounts, sales, and limited-time promotions for Defendant's car wash services.

69. The messages were impersonal and generic in nature, containing standardized promotional language.

70. The text messages were sent from a short code which means they were likely sent from a dedicated messaging platform commonly used for automated marketing campaigns.

71. The volume, frequency, and timing of the messages demonstrate that the messages were sent automatically rather than manually by an individual employee.

72. Defendant's system was capable of storing lists of consumer telephone numbers and sending identical promotional messages simultaneously or in rapid succession to numerous recipients.

73. The messages were sent without any human intervention at the time each message was transmitted.

74. Such equipment constitutes an "automatic dialing announcing device" as defined by Tex. Bus. & Com. Code § 305.001 and prohibited by § 305.053 when used without prior express consent.

## CLASS ACTION ALLEGATIONS

75. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.
>
> **Texas Telephone Solicitation Class:** All persons within the State of Texas: (1) received one or more marketing text messages from Defendant; (2) using the same or similar dialing equipment used to contact the Plaintiff; (3) within the four years prior to the filing of the Complaint.

76. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

77. Plaintiff reserves the right to amend the class definition.

78. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

79. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

80. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

81. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

82. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

83. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

    1. whether Defendant violated the TCPA;
    2. whether Defendant violated the TCPA willfully and knowingly;
    3. whether Plaintiff is entitled to statutory damages;
    4. whether Plaintiff is entitled to treble damages;
    5. whether Defendant should be enjoined from further TCPA violations.

84. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)

85. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

86. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

87. Defendant's violations were negligent, willful, or knowing.

88. As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

89. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Violation of the Texas Telephone Solicitation Act
(Tex. Bus. & Com. Code § 305.001 et seq.)

90. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

91. The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has provided prior express consent. Tex. Bus. & Com. Code § 305.053.

92. The Texas Act defines "telephone solicitation" as a telephone call or message that is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

93. Text messages that promote goods or services constitute "telephone solicitations" under the Texas Act.

94. At all relevant times, Plaintiff was a resident of Texas and received Defendant's telemarketing text messages in Texas.

95. Defendant's text messages were sent using an automatic dialing system or similar automated technology that qualifies as an automatic dialing announcing device under the Texas Act.

96. Defendant's conduct constitutes multiple violations of Tex. Bus. & Com. Code § 305.053.

97. The Texas Act provides a private right of action for a person who receives a communication in violation of the statute.

98. As a result of Defendant's violations of the Texas Act, Plaintiff is entitled to recover statutory damages of $500 per violation and attorneys fees.

99. If the Court finds that Defendant knowingly or intentionally violated the Texas Act, Plaintiff is entitled to recover additional damages as permitted by statute.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to anyone who asked Defendant to stop;

C. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

  D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

  E. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 23rd day of February, 2026.

       */s/ Anthony Paronich*
       Anthony Paronich
       **PARONICH LAW, P.C.**
       350 Lincoln St., Suite 2400
       Hingham, MA 02043
       Telephone: (617) 485-0018
       anthony@paronichlaw.com

       *Attorneys for Plaintiff*